IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRINT NEXTEL CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THUC NGO,<br><br>　　　　Defendant.<br>_____/ | No. C -12-02764 CW (EDL)<br><br>**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

　　On May 30, 2012, Plaintiff Sprint Nextel Corporation filed a complaint against Defendant Thuc Ngo, alleging claims for breach of contract, trademark infringement, false advertising, contributory trademark infringement, unfair competition, unjust enrichment, civil conspiracy, conspiracy to induce breach of contract, tortious interference with business relationships and prospective advantage, fraud, violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq.. In general, Plaintiff alleges that Defendant is engaged in, and knowingly facilitates and encourages others to engage in, unlawful business practices involving the unauthorized and deceptive bulk purchase and resale overseas of Plaintiff's phones, theft of Plaintiff's subsidy investment in the phones, unlawful access of Plaintiff's protected computer systems and wireless network, trafficking of Plaintiff's protected and confidential computer passwords, and willfully infringing Plaintiff's trademarks, collectively known as Defendant's "Bulk Handset Trafficking Scheme." Compl. ¶ 2. Defendant was served with the summons and complaint in this matter on June 8, 2012. See Docket No. 20. Defendant failed to answer the complaint or otherwise defend the action.

1    Upon Plaintiffs' request, under Federal Rule of Civil Procedure 55(a), the Clerk of this Court
2 entered Defendant's default on July 5, 2012. See Docket No. 7. By his default, Defendant is
3 deemed to have admitted the well-pleaded averments of the complaint except those as to the amount
4 of damages. See Fed. R. Civ. P. 8(b)(6).

5    On July 5, 2012, Judge Wilken ordered Plaintiff to file a motion for default judgment within
6 thirty days of the date of her order, and referred that motion to this Court for a Report and
7 Recommendation. See Docket No. 29. On August 3, 2012, Plaintiff filed a Motion for Default
8 Judgment against Defendant, seeking a judgment of liability, a deferred judgment as to damages, a
9 permanent injunction and leave to conduct post-judgment discovery regarding damages.

10   The Court held a hearing on September 11, 2012. Plaintiffs appeared through counsel Jim
11 Baldinger. There was no appearance for Defendant. For the reasons stated at the hearing and set
12 forth below, it is recommended that the Court grant Plaintiff's motion and enter default judgment as
13 described below.

14 **Background**

15   Plaintiff offers a comprehensive range of wireless and wireline communications services
16 presently serving more than 56 million customers. Compl. ¶ 17. Plaintiff is widely recognized for
17 developing, engineering and deploying innovative technologies. Id. Plaintiff's wireless program
18 enables its customers to choose from a variety of monthly voice and data plans for use on phones
19 such as the iPhone. Id. ¶ 18. Plaintiff subsidizes its customers' acquisition of phones by selling the
20 phones for substantially less than the phones cost Plaintiff. Id. ¶ 19. Plaintiff recoups this subsidy
21 through profits earned on the sale of monthly service, which is required to make and receive calls
22 on, and transmit data through, the phones. Id. Plaintiff is able to offer its phones to customers at a
23 reduced price only if the phones are used as intended on the Sprint wireless network. Id.

24   Plaintiff's phones are sold subject to Terms and Conditions, which conspicuously restrict and
25 limit the sale and use of the phones. Compl. ¶ 26; Ex. A. The limitations in the Terms and
26 Conditions are intended to restrict the use of Plaintiff's phones to Plaintiff's wireless network. Id. ¶
27 27.

28   There are two main competing network technologies worldwide, the Global System for

Mobile Communications (GSM) and Code Division Multiple Access (CDMA).  Compl. ¶ 22.  The Sprint wireless network is based on the CDMA platform.  Id.  Manufacturers that produce phones for Plaintiff install proprietary software, paid for by Plaintiff, that prevents Plaintiff's phones from being used outside the CDMA network.  Id. ¶¶ 21-22.

The iPhone 4S is a dual-band world phone, meaning that it supports both CDMA and GSM technologies.  Compl. ¶ 23.  Prior to November 11, 2011, iPhone 4S phones that were made for Plaintiff were locked to the CDMA network, but were not locked to any particular GSM network, so customers could purchase a SIM card when traveling internationally to enable their iPhone 4S to operate on GSM networks in foreign countries without CDMA service.  Id.  Plaintiff alleges that Defendant's Bulk Handset Trafficking Scheme exploits this feature and profits by reselling Plaintiff's iPhones for use on GSM networks in foreign countries.  Id.  On November 11, 2011, aware that handset traffickers were exploiting the GSM feature, Plaintiff began locking the iPhone SIM to Plaintiff's network, but Defendant's trafficking has continued.  Id.

Plaintiff discovered that although large quantities of its phones were being purchased in the United States, a significant number of those phones were not being activated for use on Plaintiffs' network.  Compl. ¶ 28.  Instead, Plaintiff discovered that the phones were purchased in bulk for shipment overseas and sold as new for substantial profits, where they could be used on other wireless networks.  Id. ¶ 29.  In addition, some of the phones were removed from their original packaging, stripped of their accessories, warranties and manuals, and shipped overseas.  Id.  Once the phones are shipped overseas and become operable on other networks, Plaintiff no longer has a revenue source to recoup the invested subsidy on that phone.  Id. ¶ 30.

Defendant has engaged in an enterprise that traffics in and resells Plaintiff's phones, and has purchased and sold large quantities of Plaintiff's phones through various co-conspirators.  Compl. ¶ 31.  On March 18, 2012, Defendant, who does business as "Tony Buy iPhone" advertised on www.craigslist.org, offering to buy phones, including the iPhone 4S.  Id. ¶ 32; Ex. B.  The advertisement also included a link directing potential sellers to Defendant's website at www.tonybuyiphones.com.  Id.  After viewing Defendant's advertisement, on March 24, 2012, Plaintiff's private investigators contacted Defendant and made arrangements to meet to sell him a

3

1  Sprint iPhone. Id. ¶ 33. On March 25, 2012, Plaintiff's investigator met with Defendant and sold
2  him an iPhone. Id. ¶ 34. During that meeting on March 25, 2012, Defendant turned on the phone to
3  determine that it was not currently activated. Id. ¶ 35. Defendant explained that he bundles, sells
4  and ships the phones he purchases in bulk overseas to be resold and the SIM cards are replaced so
5  the purchasers can use them overseas. Id. Defendant claimed to have almost enough phones to
6  fulfill his next shipment. Id. Defendant demonstrated removing the SIM for Plaintiff's investigator
7  and declared that the iPhones were easy to convert to other networks. Id. Defendant assured the
8  investigator that the phone could not be traced back to the investigator, and expressed interest later
9  in purchasing more iPhones from the investigator. Id. ¶¶ 35-36.

10       Defendant's Bulk Handset Trafficking Scheme has caused harm to Plaintiff by depriving
11  Plaintiff of the opportunity to recoup its subsidies on the sale of its phones and to earn profits by
12  providing wireless service to legitimate customers. Compl. ¶ 37. Plaintiff has incurred harm
13  specifically because Defendant is trafficking in iPhones, and Plaintiff has invested a significant
14  amount of effort and time securing the rights to sell the iPhones and has staked a significant amount
15  of its business on the iPhone brand. Id.; Ex. C. Defendant's conduct has also resulted in a shortage
16  of available iPhones, thereby harming Plaintiff and its relationship with sealers and consumers
17  because Plaintiff is not able to supply dealers with sufficient phones to satisfy demand. Id. ¶ 38.
18  Plaintiff is also harmed because Defendant removes the iPhones from the original packaging and
19  alters the phones, which deprives Plaintiff of the means to control its product. Id. ¶ 39. Plaintiff
20  also sustained harm to its reputation because the process of unlocking and reselling a Sprint phone
21  voids the manufacturer's warranty, which means that consumers are unable to obtain warranty
22  service in the event they experience problems with their phones. Id. ¶ 40. Defendant's unauthorized
23  resale of Plaintiff's phones may result in calls by confused consumers to Plaintiff's customer
24  relations department, and Plaintiff incurs substantial costs associated with those calls and its
25  reputation is further damaged because Plaintiff may be unable to assist those consumers. Id. ¶ 41.
26  Finally, Defendant's conduct has resulted in the dilution of Plaintiff's marks, causing harm to
27  Plaintiff's business reputation and goodwill and a greater likelihood of consumer confusion. Id. ¶
28  42.

**Discussion**

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(B)(2); 50 U.S.C. § 521(b)(1). Defendant is not a minor, incompetent person, or in the military. See Declaration of Derek Harris ¶ 5.

The general rule is that, upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977)). Necessary facts not contained in the pleadings, and claims which are legally insufficient, however, are not established by default. Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir.1992). Rule 55(b)(2) allows, but does not require, the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2nd Cir. 1991). Relief is limited to the plaintiff's specific demand in his complaint. Fed. R. Civ. P. 54(c). Entry of default judgment requires the consideration of several factors, including: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Here, the Eitel factors weigh in favor of entry of default judgment. First, Plaintiff's breach of contract claim appears to have merit and the complaint is sufficient to state that claim. "A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990). Here, as described above, Plaintiff's phones are sold subject to Terms and Conditions that restrict and limit the sale and use of the iPhones. Compl. ¶ 26. These Terms and Conditions are set forth in printed inserts that are included with the purchase of every Sprint phone

and are available online. See AT & T Mobility LLC v. S & D Cellular, Inc., 2009 WL 3233814, at *2 (C.D. Cal. Sept. 23, 2009) (holding that terms and conditions and the language on the packaging for a phone company's prepaid cell phones constituted a valid binding contract enforceable against purchasers, who allegedly engaged in an unlawful enterprise involving the acquisition, sale and alteration of large quantities of the cell phones). Among other things, the Terms and Conditions: (1) require that the customer pay his or her monthly service charges and other related fees; (2) require the customer to pay an Early Termination Fee for each line of service that is terminated before the contract term is concluded; (3) indicate that the phone is designed to be activated on the Sprint CDMA network; (4) prohibit resale of Plaintiff's phones and related products and services; and (5) prohibit using the phones for a purpose that could damage or adversely affect Plaintiff. Compl. ¶ 27; Ex. A. Plaintiff has performed or tendered performance in full compliance with the Terms and Conditions. Compl. ¶ 52.

Defendant is in breach of the Terms and Conditions because he purchases and re-sells new Sprint phones in large quantities, failing to activate the phones on Plaintiff's wireless network, ignoring the monthly service charges and other related fees and ignoring the Early Termination Fee charges required under the contracts. Compl. ¶ 53. See AT&T Mobility, 2009 WL 3233814, at *2 ("Facilitating others to use the phones in conjunction with service providers other than the phone company and tampering with or altering, or facilitating or assisting others to tamper with or alter, the cell phones constituted independent breaches of contract."). Defendant's conduct adversely affects Plaintiff's business model, and Plaintiff has been damaged because it cannot recoup its subsidy investment and is unable to obtain the monthly service fees it charges to legitimate customers. Compl. ¶¶ 37, 54. Thus, taking the factual allegations alleged in the complaint as true, the Court finds that Plaintiff has established a claim for breach of contract.

Second, Plaintiff's claims for trademark infringement, contributory trademark infringement and unfair competition appear to have merit and the complaint is sufficient to state those claims. Evidence supporting Plaintiff's federal claims is also sufficient to establish Defendant's liability under the state law claim for unfair competition. See Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir.1994) ("This Circuit has consistently held that state common law claims of unfair

1   competition and actions pursuant to California Business and Professions Code § 17200 are
2   'substantially congruent' to claims made under the Lanham Act."); Philip Morris v. Shalabi, 352
3   F.Supp.2d 1067, 1072 (C.D.Cal.2004) (noting the identity between the essential elements and
4   standard applied to three distinct claims of federal trademark infringement, federal false designation
5   of origin, and state unfair competition).  Thus, the Court need only focus on the legal merits of the
6   trademark infringement claim.  See Williams-Sonoma, Inc. v. Friendfinder, Inc., 2007 WL 4973848,
7   at *6 (N.D. Cal. Dec. 6, 2007) ("Therefore, as to these three claims, the Court need only focus on the
8   legal merits of the claim for federal trademark infringement. Analyzing the merits of the
9   infringement claim is sufficient because the standard of infringement, i.e., the likelihood of
10  confusion, is essentially implicated in the remaining federal and state causes of action.").

11           To prove a claim of trademark infringement under 15 U.S.C. § 1114, Plaintiff must show
12  that: (1) it owns the trademark at issue; (2) Defendant has used in commerce, without authorization,
13  a copy, reproduction, counterfeit or colorable imitation of Plaintiff's mark in connection with the
14  sale, distribution, or advertising of goods and services; and (3) Defendant's use of the mark is likely
15  to cause confusion or to cause mistake or to deceive.  See 15 U.S.C. § 1114(1); Goto.com, Inc. v.
16  Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000).  To be liable for contributory trademark
17  infringement, Defendant must have (1) "intentionally induced" the primary infringer to infringe, or
18  (2) continued to supply an infringing product to an infringer with knowledge that the infringer is
19  mislabeling the particular product supplied.  See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d
20  788, 807 (9th Cir. 2007).

21           Here, Plaintiff alleges all the facts necessary to establish trademark infringement and
22  contributory trademark infringement, as well as unfair competition, by Defendant.  Plaintiff has the
23  right to use and enforce the Sprint Marks, and it uses the Marks on and in connection with its
24  telecommunications products and services. Compl. ¶¶ 24-25.  Plaintiff alleges that Defendant,
25  without authorization, has used the Sprint Marks in connection with his sale of unlocked, counterfeit
26  phones. Compl. ¶ 146.  Defendant's use of Plaintiff's Marks has caused, and will further cause, a
27  likelihood of confusion, mistake and deception as to the source of origin of Defendant's counterfeit
28  products, and the relationship between Plaintiff and Defendant. Compl. ¶ 147.  By misappropriating

and using Plaintiff's Marks, Defendant knowingly aided and enabled distributors and sellers of his infringing products to market them to the public in a way that infringes Plaintiff's Marks "by placing in the hands of distributors and/or sellers an instrument of consumer deception." Compl. ¶ 156. In engaging in this conduct, Defendant has damaged and will continue to damage Plaintiff and the reputation and goodwill of Plaintiff, and has been unjustly enriched. Compl. ¶ 150. Thus, taking the factual allegations alleged in the complaint as true, the Court finds that Plaintiff has established claims for trademark infringement, contributory trademark infringement, and state law unfair competition.

Third, Plaintiff's false advertising claim appears to have merit and the complaint is sufficient to state a claim. The Lanham Act, 15 U.S.C. § 1125(a), makes it unlawful for "any person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin or his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Plaintiff alleges that Defendant used Plaintiff's Marks in commercial advertising and promotion and that such use misrepresented the nature, characteristics and/or qualities of the infringing products. Compl. ¶ 151. Thus, taking the factual allegations alleged in the complaint as true, the Court finds that Plaintiff has established a claim for false advertising.

Fourth, Plaintiff's claims for civil conspiracy and conspiracy to induce breach of contract appear to have merit and the complaint is sufficient to state those claims. "The elements of a civil conspiracy are '(1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting.'" Mosier v. S. Cal. Physicians Ins. Exch., 63 Cal.App.4th 1022, 1028 (1998). In addition to alleging the formation of a conspiracy, to properly allege a claim for conspiracy to induce breach of contract, Plaintiff must also allege that: (1) Plaintiff had a valid and existing contract; (2) Defendant had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the contracting party; (4) the breach was caused by Defendant's unjustified or wrongful conduct; and (5) Plaintiff has suffered damage." Dryden v. Tri-Valley Drowers, 65 Cal.App.3d 990, 995 (1977). Here, Plaintiff alleges that an agreement and conspiracy existed and continues to exist between Defendant and other co-conspirators to unlawfully purchase, traffic and resell Plaintiff's phones in bulk, which results in

unfair competition, tortious interference with business relationship and prospective advantage, unjust enrichment, trademark infringement, false advertising and violations of the Computer Fraud and Abuse Act,  Compl. ¶ 72.  Defendant engaged in one or more overt acts in pursuit of the conspiracy. Compl. ¶¶ 743.  Further, Plaintiff's complaint alleges that Defendant solicited runners and others to purchase Plaintiff's phones in bulk for the benefit of Defendant.  Compl. ¶ 82.  Defendant's active solicitation of purchasers included instructing purchasers to enter into valid contracts with Plaintiff for provision of wireless services and subsidized phones on accordance with the Terms and Conditions.  Compl. ¶¶ 82-83.  Defendant then induced the purchasers to breach their contracts with Plaintiff by, among other things, failing to pay for the monthly service charge, failing to pay the Early Termination Fee, reselling the phones and related products and services, and using the phones for a purpose that could damage or adversely affect Plaintiff.  Compl. ¶ 84.  Defendant had knowledge of the contracts between the purchasers and Plaintiff, and intended to, and did, induce the purchasers to breach their contracts.  Compl. ¶ 85.  The breach of the contracts was proximately caused by Defendant's conduct.  Compl. ¶ 86.  Plaintiff suffered damages as a result of Defendant's conspiracy.  Compl. ¶¶ 74, 87.  Thus, taking the factual allegations alleged in the complaint as true, the Court finds that Plaintiff has established claims for civil conspiracy and conspiracy to induce breach of contract.

Fifth, Plaintiff's claim for tortious interference with business relationships and prospective advantage appears to have merit and the complaint is sufficient to state this claim.  The elements of a tort claim for intentional interference with prospective economic advantage are:  (1) an economic relationship between Plaintiff and some third party, with the probability of future economic benefit to Plaintiff; (2) Defendant's knowledge of the relationship; (3) intentional acts on the part of Defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to Plaintiff proximately caused by the acts of Defendant.  <u>Korea Supply Co. v. Lockheed Martin Corp</u>., 29 Cal.4th 1134, 1153 (2003).  Here, there is a business relationship and an expectancy of business relationships that exists between Plaintiff and dealers of Plaintiff's phones, as well as between Plaintiff and purchasers of its phones.  Compl. ¶¶ 61, 62.  Defendant has knowledge of these relationships and has specifically and intentionally interfered with them by

1 conducting his Bulk Handset Trafficking Scheme and causing Plaintiff to have an insufficient supply
2 of phones to meet demand. Compl. ¶¶ 64-67. Plaintiff alleges that Defendant's intentional conduct
3 has harmed Plaintiff and its relationships with dealers, customers and prospective purchasers.
4 Compl. ¶¶ 69-70. Thus, taking the factual allegations alleged in the complaint as true, the Court
5 finds that Plaintiff has established a claim for tortious interference with business relationships and
6 prospective advantage.

7 Sixth, Plaintiff's fraud claims appear to have merit and the complaint is sufficient to state
8 these claims. To establish a cause of action for fraud and fraudulent misrepresentation, Plaintiff
9 must plead and prove four elements: (1) a knowingly false representation by Defendant; (2) an intent
10 to deceive or induce reliance; (3) justifiable reliance by Plaintiff; and (4) resulting damages. See
11 Nguyen v. Wells Fargo Bank, 749 F. Supp. 2d 1022, 1036 (N.D. Cal. 2010). Plaintiff has alleged
12 that as part of the Bulk Handset Trafficking Scheme, Defendant regularly and systematically
13 misrepresented to Plaintiff that the phones were being purchased for a legitimate purpose, that the
14 phones would be used by Defendant or other legitimate customers on Plaintiff's wireless network,
15 and that Defendant would pay all fees. Compl. ¶¶ 90, 97. Despite these representations, Defendant
16 did not intend to use the phones for a legitimate purpose or to activate them on Plaintiff's network or
17 otherwise comply with the Terms and Conditions. Compl. ¶¶ 91-92, 98-99. Defendant intended for
18 Plaintiff to rely on his representations and Plaintiff reasonably relied on those statements. Compl. ¶¶
19 92-93, 100-101. Plaintiff has suffered damages as a result of Defendant's misrepresentations.
20 Compl. ¶¶ 94, 102. Thus, taking the factual allegations alleged in the complaint as true, the Court
21 finds that Plaintiff has established claims for fraud and fraudulent misrepresentation.

22 As stated at the hearing, default judgment as to Plaintiff's claim for violation of the
23 Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq. is denied without prejudice.
24 Because Plaintiff's other claims provide all of the relief Plaintiff seeks, the Court need not reach this
25 claim, which was insufficiently briefed.

26 Finally, Plaintiff's unjust enrichment claim is not viable. Notwithstanding earlier cases
27 suggesting the existence of a separate, stand-alone cause of action for unjust enrichment, the
28 California Court of Appeals has recently clarified that "[u]njust enrichment is not a cause of action,

just a restitution claim." Hill v. Roll Int'l Corp., 195 Cal.App.4th 1295, 1307 (2011).  In light of this recent persuasive authority, courts in this district have previously determined that "there is no cause of action for unjust enrichment under California law." In re iPhone Application Litigation, 844 F.Supp.2d 1040, 1075 ( N.D. Cal. 2012); Fraley v. Facebook, Inc., 830 F.Supp.2d 785, 814 (N.D. Cal. 2011); Ferrington v. McAfee, Inc., 2010 WL 3910169, at *17 (N.D. Cal. 2010); Robinson v. HSBC Bank USA, 732 F.Supp.2d 976, 987 (N.D. Cal. 2010) (dismissing with prejudice plaintiffs' unjust enrichment claim brought in connection with claims of misappropriation and violation of the UCL because unjust enrichment does not exist as a standalone cause of action).  Thus, Plaintiff's unjust enrichment claim does not properly state an independent cause of action and must be dismissed.  See Levine v. Blue Shield of Cal.,189 Cal.App.4th 1117, 1138 (2010).

The majority of the remaining Eitel factors also weigh in favor of granting default judgment. First, if the motion were denied, Plaintiff would likely be without a remedy.  This is because if Defendant does not appear in court, Plaintiff has no method of addressing this matter.  See Pepsico, Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  Second, because Defendant did not file an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts.  Third, the sum of money at stake in this action is not yet determined; at this time, Plaintiff seeks a permanent injunction and leave to conduct post-judgment discovery to ascertain its damages.  Finally, there is no evidence that Defendant's default was due to excusable neglect.  Thus, the Court recommends granting Plaintiff's motion for default judgment as to all claims except for the unjust enrichment claim.

**Injunctive relief**

Plaintiff requests injunctive relief against Defendant under the Lanham Act.  The Lanham Act provides authority for the Court to issue an injunction.  See 15 U.S.C. § 1116(a); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.").  A permanent injunction is warranted when there is no reason to believe that the infringing party will cease the infringement

without an injunction. Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1023 (9th Cir. 2002). "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violation." Mai Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993).

Injunctive relief is available as part of a default judgment. See Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 502 (C.D. Cal. 2003); see also Craigslist, Inc. v. Mesiab, 2010 WL 5300883 (N.D. Cal. Nov. 15, 2010) (noting that the court granted default judgment as to liability and permitted the plaintiff to conduct third-party post-judgment damages discovery for six months). To establish entitlement to permanent injunctive relief, Plaintiff must establish: (1) that it suffered irreparable harm; (2) that remedies available at law are inadequate to compensate its injuries; (3) that the balance of hardships between Plaintiff and Defendant warrants an equitable remedy; and (4) that the public interest would not be disserved by a permanent injunction. See eBay Inc. v. MercExchange LLC, 547 U.S. 388, 390 (2006).

Here, Plaintiff has established that it is entitled to permanent injunctive relief. With respect to Plaintiff's trademark claims, Plaintiff has suffered irreparable harm, and will continue to do so, because Defendant's conduct has caused Plaintiff to suffer business-related injuries, including dilution of its marks and loss to its reputation. See, e.g., eBay, Inc. v. Bidder's Edge, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("Harm resulting from lost profits and lost customer goodwill is irreparably because it is neither easily calculable, nor easily compensable and therefore is an appropriate basis for injunctive relief."). Moreover, given the ongoing nature of Defendant's conduct, Plaintiff would be forced to repeatedly file suit any time that Defendant engaged in infringing conduct. See, e.g. Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1104-05 (9th Cir. 1994) ("the multiplicity of suits necessary to be engendered if redress was sought at law, all establish the inadequacy of a legal remedy and the necessity for the intervention of equity."). Further, Defendant can sell the phones throughout the world, making it almost impossible for Plaintiff to retrieve the infringing products, thereby causing additional harm.

In addition, the balance of hardships weighs in Plaintiff's favor. As stated in the complaint, Defendant's conduct has resulted in shortages of available phones, which harms Plaintiff's

relationships with dealers and consumers. Compl. ¶ 36. In addition, with each phone that it shipped overseas, Plaintiff is unable to recoup its subsidy investment on that phone. Compl. ¶ 37. Defendant, by contrast, has no legitimate interest in trafficking in illicit phones acquired by fraud. Plaintiff notes that because it is unlikely that Defendant's business is maintained solely through trafficking of Plaintiff's phones, the injunctive relief would only affect Plaintiff's phones and Defendant should not consider it a burden to follow the law.

Finally, the public interest favors injunctive relief. See, e.g., Apple, Inc. v. Psystar Corp., 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009) (holding that an injunction preventing continuing infringemnt was in the public interest because "the public receives a benefit when the legitimate rights of copyright holders are vindicated."). There is no public interest in the fraudulent acquisition and sale of phones overseas, to the exclusion and detriment of Plaintiff's dealers and consumers. By contrast, there is a strong public interest in obtaining legitimate Sprint phones rather than illegitimate phones from Defendant for telecommunications needs.

Accordingly, Plaintiff has made a showing that it is entitled to permanent injunction relief.

**Conclusion**

The Court recommends granting Plaintiff's motion for default judgment with respect to all claims except Plaintiff's claims for violation of CFAA and for unjust enrichment. Further, the Court recommends granting Plaintiff the relief it seeks, that is, a permanent injunction and leave to conduct post-judgment discovery.

The Court recommends entering the following permanent injunction, as requested by Plaintiff:

Defendant, Thuc Ngo d/b/a Tony Buy iPhone, and all of his respective agents, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for him or on his behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with Defendant or Defendant's representatives, agents, employees, independent contractors, associates, servants, and any and all persons and entities in active concert and participation with Defendant who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

1  a. purchasing, selling, reflashing, altering, advertising, soliciting and/or shipping, directly or
2  indirectly, any Sprint Phones;
3  b. unlocking any Sprint Phones;
4  c. accessing, altering, erasing, tampering with, deleting or otherwise disabling the software
5  contained in any Sprint Phones;
6  d. supplying Sprint Phones to or facilitating or in any way assisting other persons or entities
7  who Defendant knows or should know are engaged in the purchase or sale of Sprint Phones
8  or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software
9  installed in Sprint Phones;
10  e. supplying Sprint Phones to or facilitating or in any way assisting other persons or entities
11  who Defendant knows or should know are engaged in any of the acts prohibited under this
12  Permanent Injunction, including, without limitation, the buying and/or selling of Sprint
13  Phones; and
14  f. knowingly using the Sprint Marks or any other trademark, service mark, trade name or
15  trade dress owned or used by Sprint now or in the future, or that is likely to cause confusion
16  with the Sprint Marks, without Sprint's prior written authorization.

The Court also recommends requiring Defendant to deliver and turn over all Sprint Phones and products in his possession, or subject to his custody or control, bearing or infringing any Sprint trademark or confusingly similar copy thereof, to Plaintiff within ten days of the date of the final judgment in this case, as requested by Plaintiff.

Further, the Court recommends permitting post-judgment discovery. The Court recommends granting Plaintiff six months to conduct discovery, including third party discovery, to determine the appropriate amount of damages to be awarded against Defendant. The Court recommends retaining jurisdiction over this matter to address any discovery disputes that may arise. The Court recommends allowing Plaintiff to file a motion seeking entry of a judgment awarding damages against Defendant and retaining jurisdiction to enter a subsequent judgment in favor of Plaintiff and against Defendant.

Any party may serve and file specific written objections to this recommendation within

14

fourteen (14) days after being served with a copy.  See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: September 17, 2012

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge