IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRINT NEXTEL CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>THUC NGO,<br><br>    Defendant._____/ | No. C -12-02764 CW (EDL)<br><br>**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS TO DAMAGES** |

On May 30, 2012, Plaintiff Sprint Nextel Corporation filed a complaint against Defendant Thuc Ngo, alleging claims for breach of contract, trademark infringement, false advertising, contributory trademark infringement, unfair competition, unjust enrichment, civil conspiracy, conspiracy to induce breach of contract, tortious interference with business relationships and prospective advantage, fraud, violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq.. In general, Plaintiff alleged that Defendant was engaged in, and knowingly facilitated and encouraged others to engage in, unlawful business practices involving the unauthorized and deceptive bulk purchase and resale overseas of Plaintiff's phones, theft of Plaintiff's subsidy investment in the phones, unlawful access of Plaintiff's protected computer systems and wireless network, trafficking of Plaintiff's protected and confidential computer passwords, and willfully infringing Plaintiff's trademarks, collectively known as Defendant's "Bulk Handset Trafficking Scheme." Compl. ¶ 2. Defendant was served with the summons and complaint in this matter on June 8, 2012. See Docket No. 20. Defendant failed to answer the complaint or otherwise defend the action.

1    Upon Plaintiffs' request, under Federal Rule of Civil Procedure 55(a), the Clerk of this Court
2    entered Defendant's default on July 5, 2012.  See Docket No. 7.  By his default, Defendant is
3    deemed to have admitted the well-pleaded averments of the complaint except those as to the amount
4    of damages.  See Fed. R. Civ. P. 8(b)(6).
5    On August 3, 2012, Plaintiff filed a Motion for Default Judgment against Defendant, seeking
6    a judgment of liability, a deferred judgment as to damages, a permanent injunction and leave to
7    conduct post-judgment discovery regarding damages.  On September 18, 2012, the Court issued a
8    Report and Recommendation recommending, among other things, that Judge Wilken grant
9    Plaintiff's Motion and give Plaintiff leave to conduct post-judgment discovery as to damages.  On
10   October 9, 2012, Judge Wilken issued an Order adopting the Court's Report and Recommendation
11   in full.
12   Thereafter, Plaintiff conducted that discovery, including deposing Defendant.  During that
13   deposition, Defendant revealed, among other things, that he was still participating in the Bulk
14   Handset Trafficking Scheme.  In March 2013, Plaintiff filed a Motion for an Order to Show Cause
15   as to why Defendant should not be held in contempt for violating the injunction that was entered
16   with the default judgment.  Judge Wilken held a hearing on May 30, 2013 during which she awarded
17   Plaintiff $10,159 as the lost profits for the twenty-nine phones that Defendant sold after the
18   injunction was issued.  See Harris Decl. Ex. 1 at 18.
19   On December 23, 2013, Plaintiff filed a Motion for Default Judgment against Defendant,
20   seeking damages.  Defendant did not file a response.  On February 11, 2014, the Court held a
21   hearing on Plaintiff's Motion for Default Judgment.  Defendant appeared at the hearing.  For the
22   reasons stated at the hearing and in this Report and Recommendation, the Court recommends
23   granting Plaintiff's Motion for Default Judgment in the total amount of $416,905.35.

**Discussion**

25   While allegations as to liability are taken as true for purposes of deciding a motion for
26   default judgment, Plaintiff is required to prove all damages sought in the complaint.  In determining
27   damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary
28   hearing.  See Fed. R. Civ. P. 55(b)(2).  Plaintiff's burden in "proving up" damages is relatively

lenient. However, if the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default. See Cripps v. Life Ins. Co. of N. America, 980 F.2d 1261, 1267 (9th Cir.1992). In addition, "[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]." Fed. R. Civ. P. 54(c). Finally, punitive damages cannot be awarded absent an evidentiary showing. See Dolphin v. Ruiz, 2008 WL 4552940 (C.D. Cal. 2008) ( "As a general proposition, punitive damages cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to Fed.R.Civ.P. 55(b)(2) because they clearly are not liquidated or computable.").

On October 9, 2012, Judge Wilken adopted the Court's Report and Recommendation regarding liability and entered judgment as to liability against Defendant for, among other things, breach of contract, fraud, and violations of the Lanham Act. Plaintiff is entitled to recover actual damages for these claims. See Alltel Information Servs., Inc. v. FDIC, 194 F.3d 1036, 1040 n.3 (9th Cir. 1999) ("Expectation damages are the ordinary basis for damages for breach of contract.") (internal citation omitted); Lazar v. Superior Court, 12 Cal.4th 631, 646 (1996) ("Because of the extra measure of blameworthiness inhering in fraud, and because in fraud cases we are not concerned about the need for 'predictability about the cost of contractual relationships,' fraud plaintiffs may recover 'out-of-pocket' damages in addition to benefit-of-the-bargain damages.") (internal citations omitted); eAdGear, Inc. v. Liu, 2012 WL 2367805, at *18 (N.D. Cal. 2012) ("Section 43(a) of the Lanham Act provides that a trademark owner may recover: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."). Plaintiff may also be entitled to treble damages. See 15 U.S.C. § 1117(a) (providing that the court may increase a Lanham Act award by up to three times the amount of actual damages).

During post-judgment discovery relating to damages, Plaintiff issued numerous subpoenas to third parties seeking information pertaining to Defendant's conduct. See Mot. at 4. Plaintiff also retained investigators to conduct field investigations, consisting of surveillance of Defendant, telephone and text message exchanges with Defendant and online research relating to Defendant. See Mot. at 5. Plaintiff's investigators also conducted multiple undercover sales to Defendant. Id.

3

1  In addition, Plaintiff deposed Defendant. Through this discovery, Plaintiff learned that Defendant
2  had trafficked in Plaintiff's phones and that the trafficking continued even after Defendant was
3  served with the injunction in this case. Id.

**1.    Plaintiff is entitled to actual damages.**

Plaintiff began offering the iPhone for sale to the public on October 14, 2011. Breithaupt Decl. ¶ 9. Defendant testified that he had been acquiring and reselling iPhones for the three years prior to the deposition. Harris Decl. Ex. 2 at 70-71. At one point, Defendant testified that he bought and sold twenty phones per week. Harris Decl. Ex. 2 at 83. He also testified that he sold thirty phones per month for several months. Id. at 85. In addition, he also testified that he would sell sixty to seventy per month. Id. at 85. Defendant testified that ten percent of the phones that he bought and sold were Plaintiff's phones. Id. at 89.

Even though the testimony about the number of phones sold is approximate, damages may still be awarded. See Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 621 (9th Cir. 1993) (affirming damages award based on "somewhat crude" calculations based on inferences and extrapolations); eAdGear, 2012 WL 2367805, at *18 ("As a general rule, damages which result from a tort must be established with reasonable certainty.... '[D]amages are not rendered uncertain because they cannot be calculated with absolute exactness,' yet a reasonable basis for computation must exist.") (internal citations omitted). Given Defendant's contradictory testimony, the Court adopts a middle ground for the calculation of actual damages of fifteen iPhones sold per week. Thus, for purposes of calculating actual damages, during the relevant fifty-six week period, Defendant sold 840 phones of which ten percent were Plaintiff's iPhones, for a total of 84 iPhones.

Plaintiff's business model is based upon its ability to deliver an affordable product to its customers. Breithaupt Decl. ¶ 5. Plaintiff's marketing plan assumes that the iPhone handsets sold to the public typically will be sold at prices below cost. Id. Plaintiff reduces equipment revenue for these discounts offered directly to the subscriber, and for certain payments to third party dealers to reimburse the dealers for point of sale discounts that are offered to end-users primarily associated with obtaining a service plan. Id. On average, Plaintiff's subsidy investment for each Sprint iPhone sold totals $514. Id. Plaintiff recoups this subsidy investment through payments received from

4

customers under a monthly cellular service plan. Id. ¶ 6. Plaintiff is able to offer phones to its customers at reduced prices only if the phones are used as intended on Plaintiff's network. Id. Every time someone purchases one of Plaintiff's phones through a trafficking scheme, Plaintiff is deprived of the opportunity to recoup the subsidy investment and other costs associated with the phone. Id. ¶ 7.

Defendant's trafficking activities also deprive Plaintiff of the opportunity to earn profits by providing wireless service to legitimate customers. Breithaupt Decl. ¶ 8. Therefore, Plaintiff incurs lost profits consisting of the per phone lost contract life value to Plaintiff from each iPhone wireless service contract that goes unfulfilled due to illegal trafficking activity. Id. Plaintiff earns a profit on each iPhone it sells through the fees it charges its customers for phone service over the life of the contract. Id. On average, Plaintiff's lost profits for each iPhone that is unlawfully trafficked is $579. Id.

Defendant's sale of 84 iPhones caused Plaintiff damages in the form of lost subsidy investments and lost profits in the amount of $1,093 for each iPhone. Thus, these actual damages total $91,812.00.

Plaintiff also argues that actual damages include $7,150 in investigation costs. Drobny Decl. ¶ 6; Ex. 1. Stumar Investigations investigated Defendant's business practices from before the commencement of this lawsuit until Defendant was served with the injunction on November 12, 2012. Drobny Decl. ¶¶ 3-4. The investigation included: field investigations, consisting of surveillance, communicating with and undercover sales to Defendant; reviewing, organizing and preparing evidence; background research; drafting reports; and service of court documents on Defendant. Id. ¶ 5. The invoice for the investigation is not itemized and the explanation of the investigation is not detailed. At the hearing, Plaintiff's counsel stated that because Plaintiff's investigator charges a flat rate, there is no itemized invoice available. The Court concludes that Plaintiff has not made a sufficient showing to recover the entire amount of investigation costs and recommends reducing the costs by half and awarding $3,575.00.

In addition to the actual damages for the phones and the investigation costs, Plaintiff seeks a judgment as to the $10,179 that Judge Wilken ordered at the May 30, 2013 hearing. The Court

5

recommends including that amount as actual damages in this case.

Plaintiff also seeks treble damages. 15 U.S.C. § 1117(a) ("In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."). When the infringer's use of a counterfeit mark is willful, section 1117(b) requires the court to award treble damages unless the court finds extenuating circumstances. See 15 U.S.C. § 1117(b). The phrase "extenuating circumstances" is not defined in the Lanham Act, but the exception is extremely narrow. See Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1314 (9th Cir. 1997). Treble damages are appropriate here because Defendant confirmed that he trafficked in Plaintiff's iPhones prior to judgment in this case and continued to traffic in Plaintiff's iPhones even after being served with the injunction. Thus, the Court recommends awarding treble actual damages in the amount of $316,698.00.

**2. The Court does not recommend awarding punitive damages.**

Punitive damages can be awarded for Lanham Act violations. See Transgo, Inc. v. Ajac Transmission Parts Co., 768 F.2d 1001, 1024-25 (9th Cir. 1985). Plaintiff argues that punitive damages are appropriate here because Defendant acted knowingly, willfully and deliberately in disregarding Plaintiff's rights by trafficking in Plaintiff's iPhones. Defendant continued to buy and sell Plaintiff's phones after being served with a cease and desist letter in April 2012. Harris Decl. Ex. 2 at 21-22. He continued to buy and sell the phones after being served with the complaint and after consulting with a lawyer. Id. at 31-35. He also continued to sell Plaintiff's phones after being served with the injunction in this case. Id. at 45-46. Plaintiff, however, provided no framework from which to determine an amount for a punitive damages award, and did not cite any cases in which a default judgment included an amount of punitive damages. In addition, while Defendant's conduct was reprehensible, Defendant stated at the hearing that he has ceased selling Plaintiff's iPhones and the Court has already recommended an award of treble actual damages. See State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 419 (2003) ("[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.") (internal citation omitted). Therefore, as stated at the hearing, the Court does not recommend awarding punitive damages.

6

**3.      Plaintiff is entitled to attorneys' fees and costs.**

The Lanham Act gives the Court discretion to award reasonable attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). "A trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully." Earthquake Sound Corp. v. Bumper Industries, 352 F.3d 1210, 1216 (9th Cir. 2003); see also International Olympic Committee v. San Francisco Arts & Athletics, 781 F.2d 733, 738 (9th Cir. 1986) ("The statute itself contains no definition of what constitutes 'exceptional circumstances.' The Senate Report says that exceptional circumstances include conduct that is " 'malicious', 'fraudulent', 'deliberate,' or 'wilful.' This circuit has adopted this standard.") (internal citations omitted). Here, Defendant's entire business model is predicated on the unauthorized and willful exploitation of Plaintiff's marks. This conduct constitutes "deliberate and willful" behavior sufficient to merit an award of attorneys' fees under the Lanham Act.

In addition, a case may be deemed "exceptional" and merit an award of attorneys' fees under the Lanham Act when the Defendant disregards legal proceedings. See Lien v. Compusoft of Kalamazoo, Inc., 1991 WL 641575, *5 (W.D. Mich. 1991) (defendant's lack of cooperation and disrespect for the judicial process constituted exceptional circumstances warranting an award of attorneys' fees); Philip Morris USA Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (same). Here, Defendant did not participate in this case prior to entry of default (although he later appeared for his deposition and attended court hearings) and continued to violate the injunction. Thus, this case is exceptional and Plaintiff is entitled to an award of attorneys' fees.

Plaintiff has provided an attorney declaration setting forth the fees and costs incurred. Plaintiff's counsel billed a total of $110,799.20 in fees and costs for services relating to this case. See Sutton Decl. ¶ 3. This amount does not include legal expenses incurred seeking contempt sanctions, or fees and expenses since May 17, 2013 to further investigate this case and prepare motions and negotiate settlement. Id. ¶ 4. The amount also excludes fees for co-counsel in the amount of $20,000. Id. ¶ 5. Plaintiff's counsel performed legal research, drafted and filed pleadings, motions and related documents, conferred with Plaintiff, conducted discovery, argued motions, engaged in settlement negotiations and reviewed and managed documents and databases

7

for this case. Id. ¶ 6. There were eight lawyers, including five shareholders, working on this case, along with three paralegals and two file clerks. Id. ¶ 7. The fees for these lawyers and staff amounted to $105,918.50 for 343.60 hours of time at a blended hourly rate of $308.26. Id. ¶ 8; Ex. 1. Costs in this matter were $4,880.70 for copying, service, travel, postage, and reimbursement to this parties. Id. ¶ 9. Therefore, Plaintiff seeks a total of $110,799.20 in fees and costs. Id. ¶ 10.

The amount of fees and level of staffing were somewhat high. The Court recommends reducing the fee award by ten percent, for a fee award of $95,326.65, and recommends awarding Plaintiff's costs.

**Conclusion**

The Court recommends granting Plaintiff's Motion for Default Judgment in the amount of $416,905.35, representing $316,698.00 in actual damages trebled, $95,326.65 in fees and $4,880.70 in costs.

Any party may serve and file specific written objections to this recommendation within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: February 13, 2014

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Chief Magistrate Judge